```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

ALTON D. BROWN,                   :     CIVIL ACTION
                                  :     NO. 10-3458
          Plaintiff,              :
                                  :
     v.                           :
                                  :
R. LYONS, et al.,                 :
                                  :
          Defendants.             :


                    M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      October 16, 2013


          Plaintiff Alton Brown, proceeding <u>in forma pauperis</u>,

asks the Court to serve his Second Amended Complaint upon the

Defendants.  Pl.'s Req. Ct. Order Requiring Service Second Am.

Compl., ECF No. 20 ("Second Am. Comp."); Pl.'s Second Req. Ct.

Order, ECF No. 22.  He has also filed a motion for a temporary

restraining order and preliminary injunction (ECF No. 21), as

well as a supplemental motion to that effect (ECF No. 24).  For

the reasons that follow, the Court will deny the motions and

dismiss the complaint, pursuant to 28 U.S.C. §§ 1915 and 1915A.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Brown, a serial pro se prison litigant,[1] initiated this action on June 21, 2010, by filing a motion for leave to proceed in forma pauperis ("IFP").  Pl.'s Mot. Proceed IFP, ECF No. 1. He also filed an initial complaint, which he labeled the "Amended Complaint" (ECF No. 4), and a motion for a temporary restraining order and preliminary injunction (ECF No. 5).  Judge Renee M. Bumb of the District of New Jersey, serving by designation in the Eastern District of Pennsylvania, denied IFP status on February 1, 2011, on the grounds that Brown had three previous "strikes" against him and had failed to produce evidence that he was in "imminent danger of serious physical injury."[2]  Brown v. Lyons, No. 10-3458, 2011 WL 338824, at *1 (E.D. Pa. Feb. 1, 2011) (quoting 28 U.S.C. § 1915(g)) (internal quotation marks omitted). Judge Bumb therefore administratively dismissed the case, and

---

[1]      As other courts have noted, Brown "has filed well over twenty pro se matters in which he challenges the conditions in which he is housed and/or the medical treatment he has received for various alleged ailments."  Brown v. Pa. Dep't of Corr., No. 93M.D.2011, 2012 WL 8666740, at *5 n.7 (Pa. Commw. Ct. Mar. 29, 2012).  In fact, Brown's numerous filings prompted the Supreme Court to issue an order directing the clerk "not to accept any further petitions in noncriminal matters from [Brown] unless the docketing fee ... is paid."  Brown v. Pa. Dep't of Corr., 555 U.S. 1166 (2009).

[2]      As discussed herein, a prisoner who has had three previous actions or appeals dismissed for being "frivolous, malicious, or fail[ing] to state a claim" can proceed IFP only if "the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

later denied Brown's motion for reconsideration of the dismissal order.  Mem. Order, Feb. 22, 2011, ECF No. 11.

Brown appealed, and, on January 24, 2013, the Third Circuit reversed Judge Bumb's orders.  Third Circuit Order, Jan. 24, 2013, ECF No. 16.  The court explained that, although many of the allegations in Brown's complaint do not meet the imminent danger standard, "some of [his] claims invoke[] the imminent danger exception to the three strikes rule."  Id. at 2. Emphasizing that it "express[ed] no opinion about the merits of [Brown's] lawsuit," the court remanded the case and directed the district court to grant Brown IFP status.  Id.  Judge Bumb did so on February 14, 2013.[3]  Order, Feb. 14, 2013, ECF No. 17, at 3. The case was then reassigned to this Court, as it relates to another matter before the Court.  Order, Feb. 20, 2013, ECF No. 19.

Upon receiving IFP status, Brown filed an amended complaint, labeled the "Second Amended Complaint," and requested a court order requiring that the complaint be served upon Defendants.  Second Am. Compl., ECF No. 20.  Brown also filed another motion for a temporary restraining order and preliminary injunction on June 5, 2013.  Second Mot. TRO & Prelim. Inj., ECF No. 21.

---

[3]      Judge Bumb also suspended the service-of-summons deadline. Order, Feb. 14, 2013, ECF No. 17, at 3.

While those motions were still pending, Brown was transferred from SCI-Graterford to SCI-Smithfield, located in Huntingdon, Pennsylvania.  Notice Change Address, ECF No. 23.  On July 12, 2013, he again requested service of his Second Amended Complaint and a "Supplemental Complaint" that includes new allegations of unlawful conduct taking place at SCI-Smithfield. Pl.'s Second Req. Ct. Order, ECF No. 22.  He also filed a supplemental motion for a temporary restraining order and preliminary injunction on July 15, 2013.[4]  Pl.'s Supp. Mot. TRO & Prelim. Inj., ECF No. 24.

The Court must now determine whether Brown's Second Amended Complaint can properly be brought IFP, and, if so, whether it can survive the prescreening requirements of 28 U.S.C. §§ 1915A and 1915(e)(2)(B).  In accordance with the Third Circuit's order, the Court concludes that Brown is entitled to IFP status on certain of his claims.  Nevertheless, because each of those claims "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court will dismiss this action in its entirety.  See 28 U.S.C. § 1915A; see also id. § 1915(e)(2)(B).

---

[4]      Brown also requested that the undersigned recuse himself.  Pl.'s Mot. Recusal, ECF No. 26.  The Court denied the request, and also denied Brown's motion for reconsideration of that denial. Order, Aug. 27, 2013, ECF No. 27; Pl.'s Mot. Recons., ECF No. 28; Order, Sept. 10, 2013, ECF No. 29.  Brown has timely appealed those orders.

## II.  LEGAL STANDARD

The IFP statute, 28 U.S.C. § 1915, allows indigent litigants to bring an action in federal court without prepayment of filing fees, ensuring that such persons are not prevented "from pursuing meaningful litigation" because of their indigence.  Abdul-Akbar v. McKelvie, 239 F.3d 307, 312 (3d Cir. 2001) (en banc) (internal quotation marks omitted).  But, as Congress has recognized, people who obtain IFP status are "not subject to the same economic disincentives to filing meritless cases that face other civil litigants," and thus the provision is susceptible to abuse.  Id. (citing 141 Cong. Rec. S7498-01, S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl)).  In particular, the number of meritless claims brought IFP by prisoners grew "astronomically" from the 1970s to the 1990s, id. (quoting 141 Cong. Rec. S14408-01, S14413 (daily ed. Sept. 27, 1995) (statement of Sen. Dole)), and "[p]risoner litigation continues to account for an outsized share of filings in federal district courts," Jones v. Bock, 549 U.S. 199, 203 (2007) (internal quotation marks omitted).

"[I]n response to the tide of substantively meritless prisoner claims that have swamped the federal courts," Congress enacted the Prison Litigation Reform Act ("PLRA") in 1996.  Ball v. Famiglio, 726 F.3d 448, 452 (3d Cir. 2013) (quoting Shane v.

Fauver, 213 F.3d 113, 117 (3d Cir. 2000)) (internal quotation
marks omitted).  Among other things, the PLRA implemented the
so-called "three strikes rule," which provides:

> In no event shall a prisoner bring a civil
> action or appeal a judgment in a civil
> action or proceeding under this section if
> the prisoner has, on 3 or more prior
> occasions, while incarcerated or detained in
> any facility, brought an action or appeal in
> a court of the United States that was
> dismissed on the grounds that it is
> frivolous, malicious, or fails to state a
> claim upon which relief may be granted,
> <u>unless the prisoner is under imminent danger
> of serious physical injury.</u>

28 U.S.C. § 1915(g) (emphasis added).  Put more simply, under
the PLRA, a prisoner with three prior "strikes" can obtain IFP
status only if he is in imminent danger of serious physical
injury.  Courts must consider a <u>pro se</u> prisoner's allegations of
imminent danger "under our liberal pleading rules, construing
all allegations in favor of the complainant."  <u>Gibbs v. Cross</u>,
160 F.3d 962, 966 (3d Cir. 1998).

     In addition to the three strikes rule, the PLRA
established "'prescreening' provisions that require a court to
dismiss an action or appeal sua sponte if," at any time, the
court determines that "the action is 'frivolous' or 'malicious,'
'fails to state a claim upon which relief may be granted,' or
'seeks monetary relief from a defendant who is immune from such
relief.'"  <u>Ball</u>, 726 F.3d at 452 (quoting 28 U.S.C. §§

1915(e)(2)(B)(i), (ii), and 1915A(b)).  Section 1915A instructs courts to conduct that inquiry "as soon as practicable after docketing," 28 U.S.C. § 1915A(a), often "before any responsive pleading is filed," Jones v. Bock, 549 U.S. at 213.

## III. DISCUSSION

### A. IFP Status

As the Court has previously noted, "[t]here is no question that Brown has already run afoul of section 1915(g)'s three-strikes-and-you're-out policy."  Brown v. Beard, 492 F.Supp. 2d 474, 476 (E.D. Pa. 2007) (Robreno, J.).  Brown has a "prolific history of filing frivolous and abusive pro se lawsuits concerning the conditions of his confinement," Brown v. Pa. Dep't of Corr., 58 A.3d 118, 121 (Pa. Commw. Ct. 2012), and many more than three of his actions have been dismissed for being frivolous or malicious, or for failing to state a claim. See Brown v. Beard, 492 F.Supp. 2d at 476-77 (listing cases).[5]

---

[5]       Brown has not been deterred by his three strikes, and he has continued to file numerous actions.  Indeed, since 2006, when the Court last documented Brown's extensive litigation history, see Brown v. Beard, 492 F.Supp. 2d at 476-77, Brown has filed at least eleven more civil actions in federal court, not including the instant action.  See Brown v. Joyner, No. 13-4684 (E.D. Pa.) (filed Aug. 12, 2013); Brown v. Beard, No. 13-465 (E.D. Pa.) (filed Jan. 1, 2013); Brown v. Prison Health Servs., Inc., No. 12-3578 (E.D. Pa.) (filed June 25, 2012); Brown v. President & CEO of Prison Health Servs., Inc., No. 11-7935 (E.D. Pa.) (filed Nov. 3, 2011); Brown v. Pa. Dep't of Corr., No. 11-202 (E.D. Pa.) (filed Jan. 1, 2011); Brown v. Beard, No. 10-7227

Therefore, he can only proceed IFP if, at the time he filed his complaint, he was "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); see also Abdul-Akbar, 239 F.3d at 312 (holding that "a prisoner may invoke the 'imminent danger' exception only to seek relief from a danger which is 'imminent' at the time the complaint is filed").

Upon review of Brown's original complaint, the Third Circuit concluded that "some of [Brown's] claims invoked the imminent danger exception," and thus that Judge Bumb "should have granted [Brown] in forma pauperis status."  Third Circuit Order, Jan. 2, 2013, ECF No. 16, at 2.  Accordingly, on remand, Judge Bumb granted Brown IFP status, and the case was then transferred to this Court.

After receiving the green light to bring his action IFP, Brown proceeded to file his Second Amended Complaint.[6]  The new complaint is 99 pages long – nearly double the length of the original complaint – and it names 182 individuals and entities as Defendants (100 more than were named in the original

---

(E.D. Pa.) (filed July 14, 2010); Brown v. Pa. Dep't of Corr., No. 10-943 (E.D. Pa.) (filed Mar. 3, 2010); Brown v. Pa. Dep't of Corr., No. 08-5425 (E.D. Pa.) (filed Nov. 17, 2008); Brown v. Beard, No. 08-743 (E.D. Pa.) (filed Feb. 15, 2008); Brown v. Beard, No. 07-4675 (E.D. Pa.) (filed Nov. 7, 2007); Brown v. DiGuglielmo, No. 07-3771 (E.D. Pa.) (filed Sept. 11, 2007).

[6]      Brown could amend his complaint once as of right prior to service under Federal Rule of Civil Procedure 15(a)(1).

complaint).[7]  The Second Amended Complaint also includes numerous new allegations, most of which do not involve any threat of "imminent danger."  Rather, Brown seems to be trying to enlarge his IFP status by filing an omnibus complaint that raises a litany of claims that would otherwise be barred by the three strikes rule.  For example, he now claims that he was denied a haircut on October 24, 2010 (Second Am. Comp. ¶ 169(n)), that he was forced to use old copies of his bank transactions (id. ¶ 169(x)), and that on one occasion he was not given fingernail or toenail clippers (id. ¶ 169(ll)).

        In addition to those seemingly trivial matters, Brown also raises claims that – at least on their face – implicate serious constitutional questions.  He claims, for instance, that he has been subjected to harassing and intrusive searches in retaliation for exercising his rights (id. ¶ 169(j)), and that he has previously experienced vicious beatings from prison guards (id. ¶ 169(ddd)).  Because of his extensive history of filing frivolous claims, Brown has lost the privilege of bringing those claims IFP, as they do not suggest that he is in imminent danger of serious physical harm.  Yet now, because he has succeeded in stating a claim of imminent danger as to some claims, he asks the Court to review – and Defendants to respond

---

[7]      By Brown's count, the complaint is 89 pages long, but he neglects to number some pages and repeats numbers on occasion.

to – each and every claim in his 99-page opus, without prepayment of the filing fee.

The Court will not entertain this new effort to abuse the judicial process.  The PLRA is quite clear that, in general, a prisoner who brings three frivolous actions loses the privilege of IFP status.  See Abdul-Akbar, 239 F.3d at 314 (noting that "[i]n stark terms," the PLRA "declared that the IFP privilege will not be available to prisoners who have, on three occasions, abused the system by filing frivolous or malicious lawsuits or appeals, no matter how meritorious subsequent claims may be").  The Act provides a limited exception to that rule when a prisoner is in "imminent danger of serious physical injury," which serves as a "safety valve" to ensure that a prisoner is not subject to serious injury due to his inability to pay a filing fee.  Ball, 726 F.3d at 467.  The imminent danger exception thus creates a narrow opening for a particular type of claim; it does not give prisoners like Brown a license to swamp the court with claims whenever they successfully state a claim of imminent danger.  Cf. Pettus v. Morgenthau, 554 F.3d 293, 297 (2d Cir. 2009) (concluding that the exception's "unmistakable purpose is to permit an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy for an imminent danger," not to allow such a litigant to "file an unlimited number of lawsuits, paying no filing fee, for anything

from breach of a consumer warranty to antitrust conspiracy"). Indeed, allowing all of Brown's claims to accompany an allegation of imminent danger would have the effect of undoing Congress's intent in enacting the PLRA, which was to "ensur[e] that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit."  Jones v. Bock, 549 U.S. 199, 203 (2007); see also Abdul-Akbar, 239 F.3d at 315 (declining to adopt an interpretation of the imminent danger exception that would "eviscerate" the general rule, which was intended to "reduce the huge volume of prisoner litigation").[8]

---

[8]      The Ninth Circuit has reached the opposite conclusion, holding in Andrews v. Cervantes, 493 F.3d 1047, 1053-54 (9th Cir. 2007), that, "once a prisoner satisfies the exception to the three-strikes rule and otherwise qualifies for IFP status, the district court must docket the entire complaint and resolve all of its claims, without requiring the upfront payment of the filing fee."  The court based its holding on the PLRA's use of the term "action," which it says "refers to a case as a whole rather than just its individual claims."  Id. at 1054.  The court further explained that "allowing the whole suit to be filed ... makes practical sense," because the filing fee "pertains to the action as a whole, not to subparts of it."  Id.

        The Ninth Circuit's reasoning is unpersuasive.  First of all, the plain language of the statute does not require that an entire complaint be docketed based upon a single allegation of imminent danger.  Section 1915(g) states that no prisoner shall "bring a civil action" if he has had three prior actions dismissed as frivolous, malicious, or failing to state a claim, "unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).  The provision does not specify what must happen in the event that a prisoner is found to be under imminent danger, and it is therefore ambiguous as to whether the exception opens the door to entire actions, as the

11

The Court will therefore grant Brown IFP status only as to those claims in his amended complaint which, even under the liberal pleading rules applicable to pro se litigants, state a claim of imminent danger.[9]  "Imminent dangers are those dangers which are about to occur at any moment or are impending."

---

Ninth Circuit held, or just to claims that allege imminent danger.

Moreover, under the Ninth Circuit's interpretation, any abusive litigant who alleges that he is in imminent danger could force a court to resolve a litany of unrelated and otherwise barred claims, without payment of a filing fee, just as Brown tries to do here.  Such an interpretation of the imminent danger exception would eviscerate the general rule that prisoners with three strikes lose the privilege of IFP status.  See Abdul-Akbar, 239 F.3d at 315 (refusing to conclude "that with one hand Congress intended to enact a statutory rule that would reduce the huge volume of prisoner litigation, but, with the other, it engrafted an open-ended exception that would eviscerate the rule").  Therefore, as Congress does not generally "hide elephants in mouseholes," Pettus, 554 F.3d at 297 (quoting Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468 (2001)), the Court declines to interpret the imminent danger exception as requiring courts to docket an entire complaint whenever a prisoner who has previously abused the judicial process is able to allege imminent danger of serious physical injury.

In so concluding, the Court acknowledges that the Third Circuit previously suggested, in a footnote, that the merits of an entire cause of action are "available for consideration and decision" once the imminent danger exception is satisfied.  Gibbs v. Roman, 116 F.3d 83, 87 n.7 (3d Cir. 1997).  But that statement was made in dicta, and Gibbs was explicitly overruled by the Third Circuit's en banc decision in Abdul-Akbar.  See Abdul-Akbar, 239 F.3d at 312.  Therefore, Footnote 7 of Gibbs is not the law of the circuit.

[9]   The Western District of Pennsylvania took a similar approach in a previous action brought by this litigant, granting Brown IFP status only as to those claims that alleged imminent danger. Brown v. Beard, No. 04-1906, 2006 WL 891137, at *1 (W.D. Pa. Mar. 31, 2006).

Abdul-Akbar, 239 F.3d at 315 (internal quotation marks omitted).
A prisoner's allegation that he faced imminent danger sometime
in the past is therefore "an insufficient basis to allow him to
proceed in forma pauperis." Ball, 726 F.3d at 467 (quoting
Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999))
(internal quotation marks omitted). Practices that "may prove
detrimental ... over time," such as poor care for arthritis,
also "do not represent imminent dangers," as the harm is not
"about to occur at any moment." Id. at 468 (quoting Abdul-
Akbar, 239 F.3d at 315) (internal quotation marks omitted).
Finally, even if an alleged harm may in fact be "impending," it
does not satisfy the exception if it does not threaten to cause
"serious physical injury." 28 U.S.C. § 1915(g); see also Ball,
726 F.3d at 468 (suggesting that certain complaints, such as
being forced to work in inclement weather, "may not be 'danger'
at all") (citing Martin v. Shelton, 319 F.3d 1048, 1050 (8th
Cir. 2003)). When considering whether imminent danger of
serious physical injury has been alleged, courts may reject
"vague" or "conclusory" allegations as insufficient to provide a
basis for IFP status. Id.

Most of Brown's allegations of imminent danger do not
meet that standard. Several of his claims involve past events
that he has not shown are likely to recur. Specifically, he
alleges that: (1) he was refused a soft-food diet while his

dentures were being repaired (Second Am. Compl. ¶ 182); (2) he is at risk of eye disease because guards shone lights or lasers in his eyes (id. ¶ 189); (3) Defendants provoked other inmates to attack him (id. ¶ 190); and (4) he has been housed with prisoners who are mentally or emotionally disturbed (id. ¶ 197). In each instance, he points only to isolated past examples of that conduct, and his "generalized allegations" that such practices will continue are "insufficient to connect the separate incidents ... into a pattern of threats of serious physical injury that are ongoing."[10]  See Abdul-Akbar, 239 F.3d at 315 n.1.

Other of Brown's claims of imminent danger are too vague or conclusory to provide a basis for IFP status.  He says that he is in imminent danger of serious injury "because of Defendants' practice of interfering with doctors' orders and medical examinations" (Second Am. Comp. ¶ 180), because Defendants have "refused to treat" a litany of medical

---

[10]    Although Brown implies that Defendants' conduct will continue, a thorough review of his complaint reveals that his allegations are based only on a few past examples.  For example, Brown says that he is "in imminent and ongoing danger of serious mental/psychological injury as a result of being confined around prisoners who are mentally and/or emotionally disturbed" (Second Am. Compl. ¶ 197), but elsewhere in his complaint points to only two prior incidents in which he was housed with mentally ill prisoners, one in January 2011 and the other in May 2011 (id. ¶¶ 169(c), 169(ss)).  Such isolated incidents are insufficient to establish a claim of imminent danger.  Abdul-Akbar, 239 F.3d at 315 n.1.

complaints, ranging from stomach pain to cold feet (id. ¶ 181),
because prison doctors have prescribed "medication that is
toxic/harmful to his preexisting diseases/illnesses" (id. ¶
188), because of "punitive diets" designed to "cause[]
malnutrition" (id. ¶ 191),[11] and because of the general "physical
and psychological abuse/torture" he claims to have been
subjected to (id. ¶ 193).  Those claims amount to, at best,
"vague and utterly conclusory" assertions, and thus do not
provide a basis for IFP status.  See Ball, 726 F.3d at 468
(internal quotation marks omitted).

        Still other of Brown's claims fail to include an
allegation of actual "danger."  See id. (explaining that some
complaints, such as "working in inclement weather," "may not be
'danger' at all").  He alleges that Defendants have undertaken a
general campaign to cause him stress through minor irritations
(Second Am. Comp. ¶¶ 192, 196, 199, 205-06, 210-13), such as
denying him tennis shoes in his size (id. ¶ 169(a57)), depriving
him of personal items (id. ¶ 169(a55)), and placing French toast
on a tray intended only for lactose-free breakfast items (id. ¶
169(a54)).  Although such annoyances can cause stress even

_____

[11]     Brown's allegations of being placed on a "punitive
diet" have been rejected previously, see Brown v. Beard, 492
F.Supp. 2d at 478 n.2; Brown v. Beard, No. 04-1906, 2006 WL
891137, at *2 (W.D. Pa. Mar. 31, 2006), and thus, to the extent
he claims to currently be in imminent danger of malnutrition,
that claim can properly be rejected as frivolous and malicious.
See 28 U.S.C. § 1915A.

outside a prison setting, which, as Brown notes, can "trigger emotional feelings" of "anxiety, fear, insecurity, and anger," as well as health problems such as "sleep disturbances" and "depressed immune functions" (id. ¶ 192), they do not amount to an "imminent danger of serious physical harm."  Similarly, Brown's allegations that Defendants have caused him nervousness and worry (id. ¶ 194), and that their tactics have produced "frustration, distrust of others, and depersonalization" (id. ¶ 215), are insufficient to meet the imminent danger standard.[12]

Finally, Brown's allegations of inadequate treatment of his high blood pressure (id. ¶¶ 170-181) do not amount to imminent danger.  Brown says that he is in imminent danger of various cardiovascular diseases because of Defendants' failure to provide blood pressure monitoring, a proper diet, cholesterol-lowering medication, genetic testing, and stress management.  But, as the Court has previously explained, even "if Brown has certain conditions that place him at risk of heart disease," such as high blood pressure, "that does not mean heart disease is 'impending' or about to 'occur at any moment.'"

---

[12]     Brown warns that these negative psychological effects could worsen over time, and, if unchecked, could lead to "severe psychiatric decompensation."  Second Am. Comp. ¶ 217.  Even accepting that possibility, those allegations are insufficient to meet the imminent danger standard because Brown has not shown that such serious effects "are about to occur at any moment or are impending."  Abdul-Akbar, 239 F.3d at 315 (internal quotation marks omitted).

Brown v. Beard, 492 F.Supp. 2d at 479.  "Allegations that prison
medical personnel are failing to treat a prisoner's risk factors
for heart disease, even purposefully so, are still a far cry
from the type of allegations of inadequate medical treatment
that have been held to pose an imminent danger of serious
physical injury."  Id. (internal quotation marks omitted); see
also Ball, 726 F.3d at 468 (concluding that allegations of poor
medical care that "may prove detrimental to [plaintiff's] health
over time ... do not represent 'imminent dangers'").  Therefore,
those allegations also fail to state a claim of imminent danger.

        Brown has, however, raised some claims in his Second
Amended Complaint that successfully invoke the imminent danger
exception, as he did in his original complaint.  See Third
Circuit Order, Jan, 2, 2013, ECF No. 16 (concluding that "some
of Appellant's claims invoked the imminent danger exception to
the three strikes rule").  Namely, Brown claims that he has
received inadequate treatment for his Hepatitis C and for a skin
disease he contracted in a contaminated cell (Second Am. Compl.
¶¶ 183-187), and that he is being housed in unventilated cells,
which exacerbate his serious pulmonary conditions (id. ¶ 201).
Those allegations, if true, would suggest that Brown is
currently in danger of suffering a serious physical injury.  See
Gibbs v. Cross, 160 F.3d 962, 966 (3d Cir. 1998) (concluding
that health hazards posed by "improper ventilation and the

17

inhalation of dust and lint particles" are sufficiently serious
to satisfy the exception); see also Brown v. Johnson, 387 F.3d
1344, 1350 (11th Cir. 2004) (holding that allegations of
worsening illness due to withdrawal of treatment for HIV and
hepatitis constitute allegations of imminent danger).

     Accordingly, the Court will grant Brown IFP status for
the limited purpose of resolving those claims.  With regard to
the remaining claims, they will be dismissed without prejudice,
and can be reasserted if Brown pays the appropriate filing fee.

     B. Prescreening Provisions of 28 U.S.C. §§ 1915(e), 1915A

     Having determined which claims can be brought IFP,
the Court now turns to the PLRA's prescreening requirements.  As
discussed above, there are two statutory provisions that allow
courts to reject IFP actions that are frivolous, malicious, or
fail to state a claim.  First, 28 U.S.C. § 1915(e)(2) requires
courts to dismiss a case filed IFP if, at any time, the court
determines that "the action or appeal (i) is frivolous or
malicious; (ii) fails to state a claim on which relief may be
granted; or (iii) seeks monetary relief against a defendant who
is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).
Second, § 1915A imposes an affirmative duty on courts to review
the complaint "in a civil action in which a prisoner seeks
redress from a governmental entity or officer or employee of a

governmental entity," and "dismiss the complaint, or any portion

of the complaint," if it is found to be "frivolous, malicious,

or fails to state a claim upon which relief may be granted."

Id. § 1915A(a), (b).

Brown's claims cannot survive those prescreening

measures.  His first contention – that he has received

inadequate treatment for his Hepatitis C – has been addressed

and rejected on several previous occasions.  See Brown v. Beard,

492 F.Supp. 2d at 478 n.2; Brown v. President & CEO of Prison

Health Servs., Inc., No. 11-7935, 2012 WL 926146, at *1 n.1

(E.D. Pa. Mar. 16, 2012); Brown v. Pa. Dep't of Corr., No. 03-

289, 2006 WL 2434060, at *2-*5 (W.D. Pa. Aug. 17, 2006); Brown

v. Beard, No. 04-1906, 2006 WL 891137, at *2-*3 (W.D. Pa. Mar.

31, 2006).  Bringing it yet again in this proceeding constitutes

"malicious" action by the Plaintiff, as it abuses the judicial

process to "merely repeat[] pending or previously litigated

claims."  See Day v. Toner, No. 13-2123, 2013 WL 3481819, at *1

(3d Cir. July 9, 2013) (not precedential) (citing Crisafi v.

Holland, 655 F.2d 1305, 1309 (D.C. Cir. 1981)).

As for Brown's claim regarding his skin infection, it

amounts to a disagreement over the proper course of treatment,

and thus fails to state a claim upon which relief can be

granted.  It is well established that, in order to state a

cognizable Eighth Amendment claim based upon inadequate medical

19

care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Brown admits in his complaint that he is receiving prescription treatment for his skin infection (see Second Am. Comp. ¶ 169(a64)), he just does not believe that the treatment has been adequate. In other words, "he alleges a disagreement with medical professionals about his needs," which "does not state a cognizable Eighth Amendment claim under the deliberate indifference standard." Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003).

Finally, Brown's allegations regarding adequate ventilation of his cell also do not provide a basis for relief. He claims to have been intermittently housed in unventilated "closed cells," which he says "increase[] the risk of transmission of airborne diseases" and "aggravate[] his preexisting diseases," including his chronic obstructive pulmonary disease. Second Am. Compl. ¶ 201. In support of that claim, Brown chronicles each instance over the last several years in which he was kept in an unventilated cell. See id. ¶¶ 168, 169(v), 169(mm)-(oo), 169(a20), 169(a81).

It is true that allegations of inadequate ventilation can, in some circumstances, state an Eighth Amendment claim.

20

For instance, the Third Circuit held that an inmate had stated a claim of deliberate indifference by alleging that "he was exposed, with deliberate indifference, to constant smoking in his cell for over seven months and as a result suffered nausea, an inability to eat, headaches, chest pains, difficulty breathing, numbness in his limbs, teary eyes, itching, burning skin, dizziness, a sore throat, coughing and production of sputum."  Atkinson, 316 F.3d at 268.

But Brown's allegations are different in kind from those raised in the Atkinson complaint.  Although Brown meticulously documents the instances in which he was housed in an unventilated cell, he never describes any adverse health events that he experienced from those conditions.  Instead, he summarily concludes that the lack of ventilation "had serious adverse effects on his damaged lungs" (Second Am. Compl. ¶ 168), without specifying the nature of those adverse effects or how they manifested themselves.  Therefore, at best, Brown has alleged that prison officials have periodically placed him in unventilated cells, which has harmed his lung condition.  That allegation is insufficient to support an Eighth Amendment claim, as it does not reflect prison officials' deliberate indifference to Brown's serious medical needs.  See Estelle v. Gamble, 429 U.S. at 106.

## IV.   CONCLUSION

Brown's claims in his Second Amended Complaint that do not involve a threat of "imminent danger" are barred by the three strikes rule.  Furthermore, each of Brown's claims actually implicating such a threat can be rejected as frivolous, malicious, or failing to state a claim.  The Court will therefore dismiss the Second Amended Complaint in its entirety under 28 U.S.C. § 1915 and § 1915A, and will deny as moot Brown's pending motions for service of the complaint (ECF Nos. 20, 22) and his motions for a temporary restraining order and preliminary injunction (ECF Nos. 21, 24).  An appropriate order follows.